UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| LaDAWNA R. JONES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:10-cv-00553-DML-JMS |
| MICHAEL J. ASTRUE, | ) ) ) | |
| Defendant. | ) | |

# Entry on Judicial Review

Plaintiff LaDawna R. Jones applied on October 22, 2004, for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since January 1, 1996 (later amended to January 17, 2002), because of a heart condition and hypertension that also cause pain and depression. (*See* R. 124). This is the fourth time Ms. Jones has applied for social security disability benefits. (R. 696).

Acting for the Commissioner of the Social Security Administration, an administrative law judge ("ALJ") held a hearing on April 17, 2008, and issued a decision on May 12, 2008, finding that Ms. Jones is not disabled because she is capable of performing work at the light and sedentary levels of exertion. The National Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Ms. Jones filed this civil action for judicial review under 42 U.S.C. § 405(g) (made applicable to SSI claims by 42 U.S.C. § 1383(c)(3)).[1]

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Ms. Jones asks the court to reverse the ALJ's decision and award benefits, or to remand for further proceedings, on the grounds that the ALJ's determinations at steps three and five of the familiar sequential analysis are not supported by substantial evidence. She also contends that the ALJ improperly failed to obtain medical expert testimony regarding Ms. Jones's mental impairments and improperly assessed Ms. Jones's credibility.

For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## **Standard for Proving Disability**

To prove disability for purposes of SSI benefits, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Ms. Jones is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards for SSI disability benefits by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a)(4).

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The third step is an analysis of whether the claimant's impairments, either

singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.

*Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but

he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Ms. Jones was born on October 19, 1970, was 31 years old at the time of the alleged January 2002 onset of disability, and 37 years old at the time of the ALJ's decision. She was pregnant with her ninth child at the time of the administrative hearing in 2008. The ALJ found that Ms. Jones has severe mental impairments of drug and alcohol abuse and bipolar disorder, and suffers from a severe heart impairment. He rejected Ms. Jones's testimony that back problems are also severe, and attributed her current knee pain to her pregnancy. At step three, the ALJ evaluated the medical evidence against listings 4.02 (chronic heart failure), 12.04 (affective disorders), and 12.09 (substance addiction disorders), and found that Ms. Jones's impairments do not meet or medically equal a listing. Ms. Jones had no past relevant work to evaluate at step four. At step five, the ALJ decided that Ms. Jones is capable of performing light and sedentary work so long as her work does not require more than superficial interactions with the public, co-workers, and supervisors. He further found, based on the testimony of a vocational expert, that there are a significant number of jobs suiting Ms. Jones's residual functional capacity at both the light exertional level (as a fast food worker, food preparation worker, or cashier) and sedentary level (as a receptionist/information clerk and general office clerk). Accordingly, the ALJ determined that Ms. Jones is not disabled.

**A.     The ALJ's step three analyses are supported by substantial evidence.**

Ms. Jones contends that the ALJ erred at step three in finding that her impairments did not meet or medically equal listings 4.02 and 12.04. She also contends that the evidence proved that she met listing 12.06 (anxiety related disorders).

5

### 1. Ms. Jones has not met her burden that listing 4.02 was met.

To support her argument that her physical ailments met or equaled the requirements of listing 4.02, Ms. Jones describes the contents of a variety of medical records and, for some of these records, she claims that a statement within it provides evidence relevant to an unspecified requirement of listing 4.02. She does not tell the court what the requirements for listing 4.02 are—a significant omission, since it is her burden to prove that she meets each requirement. *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999).

Chronic heart failure, described in listing 4.02, requires an impairment of the heart's ability to pump enough oxygenated blood to the body despite a regimen of prescribed treatment. (*See* general description at listing 4.00D). It requires medical documentation of physical signs and symptoms described in paragraphs A *and* B of the listing, which are very detailed:

> A. Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2. Diastolic failure (see 4.00D1(a)(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC [medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

   a. Dyspnea, fatigue, palpitations, or chest discomfort; or
   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
   d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02.

Ms. Jones has not connected for the court medical evidence to each of the requirements, and the court declines to attempt to do that for her. Indeed, it is likely a futile exercise. The Commissioner points out shortcomings in the medical evidence as compared to listing 4.02 to which Ms. Jones failed to respond in her reply brief.[2] Further, the ALJ, in making his determination that Ms. Jones's heart-related impairments did not meet or medically equal listing 4.02, relied in part on the hearing testimony of the medical expert, Dr. Richard Gardner. (R. 17-18). Dr. Gardner had reviewed the entire medical record, discussed specific records documenting Ms. Jones's heart disease, and opined that she did not meet the severity level required by listing 4.02. (R. 715-720). Dr. Gardner's opinion is substantial evidence supporting the ALJ's finding that listing 4.02 was not met.

---

[2] For example, the occasion on which Ms. Jones met criteria for systolic failure under 4.02A1 (with left ventricular end diastolic dimension greater than 6.0 cm) occurred one month before her heart valve replacement surgery (*see* R. 448-51), after which testing showed diastolic dimension of less than 6.0 cm. (See R. 519, 525, 576). And although Ms. Jones's ejection fraction was measured on some occasions at less than 30% (and many occasions greater than 30%), the ALJ (and the medical expert, Dr. Gardner) observed that Ms. Jones's medical records repeatedly state instances when her cardiomyopathy was cocaine-induced. (*See* R. 20-21, 718-19 (March 2006, March and April 2007, August 2007 hospital admissions for chest pain, testing positive for cocaine)). As the regulations direct, an acute episode of heart failure that is triggered by a remediable factor may suggest the lack of a chronic impairment. (*See* listing 4.00D2b).

**2. The ALJ's decision at step three regarding Ms. Jones's mental impairments is supported by substantial evidence.**

Ms. Jones argues that the ALJ erred in his evaluation of her mental impairments at step three because he should have considered listing 12.06 (anxiety related disorders) in addition to listing 12.04 (affective disorders), and should have summoned a medical expert regarding her mental impairments.

The ALJ's failure to mention listing 12.06 was not error. Listing 12.04, which the ALJ specifically addressed, and listing 12.06 both require the claimant's mental condition—whether an anxiety related disorder or an affective disorder—to manifest itself at a level of severity measured by the same factors. That is, the "B criteria"—which are exactly the same for 12.04 and 12.06—must be satisfied.[3] Ms. Jones contends that she met the B criteria, and the ALJ erred in his decision that she did not. If the ALJ's decision that Ms. Jones did not satisfy the B criteria for purposes of listing 12.04 is supported by substantial evidence, then Ms. Jones did not satisfy the requirements of listing 12.06 either.[4]

To satisfy the B criteria, a claimant's mental disorder must result in at least two of the following:

Marked[5] restriction of activities of daily living;

---

[3]   A claimant whose mental impairment does not manifest itself at a severity level tested by the B criteria may then look to the "C criteria" for a particular listing. The C criteria for 12.04 and 12.06 are not identical, but Ms. Jones does not claim that she met the C criteria for either listing.

[4]   Moreover, Ms. Jones testified that her mental difficulties stemmed from bipolar disorder and depression, both of which fit under the 12.04 affective disorders listing. Although her brief to this court points out several medical records referencing "panic attacks" or "anxiety," Ms. Jones merely assumes, but does not attempt to show, that those references fit the initial diagnostic criteria and subpart A for listing 12.06's anxiety related disorders.

[5]   "Marked" means "more than moderate but less than extreme." Listing 12.00C (Assessment of level of severity). The regulation explains further that a "marked limitation may

8

>   Marked difficulties in maintaining social functioning; or
>
>   Marked difficulties in maintaining concentration, persistence, or pace; or
>
>   Repeated episodes of decompensation, each of extended duration.

*See* listings 12.04B and 12.06B.

The ALJ's decision contains a detailed look at the evidence regarding these factors. (R. 18-19). His decision has no resemblance to Ms. Jones's contention—which is obviously boilerplate with no application to this case—that "this ALJ cited no evidence but also simply assumed that Ladawna Jones' impairments did not medically equal any listing . . .[T]his ALJ . . . simply assumed the absence of equivalency without any relevant discussion." (*See* Plaintiff's opening brief, Dkt. 23, at p. 24). She also accuses the ALJ of "ignoring" evidence that, in fact, the ALJ discussed in detail. (*See, e.g., id.* at p. 32, asserting that the ALJ ignored a November 15, 2007 mental health treatment record, but, in fact, the ALJ's opinion includes a discussion of the very things in this treatment record that Ms. Jones says he ignored, *see* R. 18).

The ALJ evaluated each B factor in turn and explained the evidence he considered and relied upon in reaching his conclusions that Ms. Jones had only mild restrictions in her activities of daily living, mild difficulties with concentration, persistence, or pace, moderate difficulties in social functioning, and no episodes of decompensation. (R. 18-19). Ms. Jones does not challenge the ALJ's discussion on any of these factors. Rather, she cites a handful of mental health records and then asserts in conclusory fashion that the ALJ should have determined, based on these records, that she had *marked* difficulties, instead of mild or moderate ones. (*See*

---

arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Plaintiff's opening brief, Dk5. 23, at p. 22). The court may not reweigh the evidence for Ms. Jones.

The ALJ did a thorough job in his evaluation. He considered that Ms. Jones had a history of mental health treatment and was in group therapy, and he took account of her mental status examination (where she was diagnosed as malingering). The ALJ's findings were also supported by the opinion of Ms. Jones's psychiatric nurse that Ms. Jones's mental disorder issues were improving (R. 593, opining that "mental illness will improve and not affect ability to work"), and by the opinion of a state agency physician that Ms. Jones did not suffer from a listing level mental impairment. (R. 428). *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2000) (ALJ may rely on disability forms completed by state agency physicians to support step three finding). *See* R. 23 (ALJ considered opinions of state agency medical consultants to degree they were not inconsistent with ALJ's findings based on the current record).

Under these circumstances, the ALJ did not err by not obtaining additional medical expert testimony regarding Ms. Jones's mental impairments. The administrative record was sufficiently thorough and developed. The court finds no basis for concluding that the ALJ was required to solicit more medical information or another medical opinion. *See Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009) (ALJ's duty to obtain additional evidence to flesh out medical opinion is triggered when the medical support for the opinion is "not readily discernable"); *Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (ALJ required to summon medical expert *if* "that is necessary to provide an informed basis for determining whether the claimant is disabled") *Kendrick v. Shalala,* 998 F.2d 455 (7th Cir. 1993) (ALJ was not required to order another round of consultative exams when there was sufficient facts to make an informed decision).

**B.     The ALJ's credibility determination is not patently wrong.**

Ms. Jones contends that the ALJ "rejected or ignored all evidence" that the pain she experiences and the effects of her mental health impairments make it impossible for her to work. (Plaintiff's brief, Dkt. 23, at p. 34). She asserts that, although the ALJ cited his obligation to assess her credibility according to the factors the SSA requires, he failed to fulfill that obligation. Ms. Jones does not, however, point to any specific way in which the ALJ purportedly failed to support his negative credibility determination.

**1.     A two-part test guides an ALJ's credibility assessment.**

A two-part test determines whether a claimant's descriptions of her own limitations contribute to a finding of disability. First, the claimant must provide objective medical evidence of an impairment or combination of impairments that could be expected to produce the symptoms she alleges. Second, the ALJ must consider the intensity and persistence of the alleged symptoms. 20 C.F.R. § 416.929(a)-(c). The ALJ must consider the claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other evidence of the following factors:

(1) The claimant's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Having considered these factors, the ALJ may make a reasoned credibility determination based upon the evidence about whether the claimant acts, day in and day out, like a person would act who is really suffering from the symptoms the claimant alleges. It is not necessary for the ALJ to recite findings on each factor, but the ALJ must give reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed. *See* SSR 96-7p; *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination). The court will not set aside an ALJ's credibility determination if there is some support in the record unless it is "patently wrong." *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994).

## 2. The ALJ made reasoned findings regarding the credibility of Ms. Jones's limitations due to physical impairments.

In support of his negative credibility finding, the ALJ provided a detailed evaluation of Ms. Jones's objective medical evidence, treatment (or lack thereof), medications, opinions of treating physicians, and daily activities. He found that her complaints of pain or limiting physical abilities stemming from back problems or swelling in her legs were not supported by medical evidence. He noted that Ms. Jones had not seen a back specialist and that the only objective evidence about her back stated that her degenerative disc disease was mild, her strength and reflexes were normal, and sensation was intact. (R. 22). Ms. Jones sought to support her testimony that back pain limited her functioning with medical testimony, but the only such testimony she offered was that of her drug addiction counselor who was merely repeating Ms. Jones's subjective complaints to her. The swelling in Ms. Jones's legs had been treated with medication that had proven effective to relieve the edema. (*Id.*).

With respect to Ms. Jones's heart condition, the ALJ acknowledged that her heart impairment was severe and her aortic valve was replaced in December 2004. The ALJ traced the course of Ms. Jones's heart treatment since December 2004. Significantly, Ms. Jones's subsequent heart problems routinely (though not always) were connected with her failure to take prescribed medications and instead to use cocaine. (*See, e.g.,* R. 136). The ALJ cited numerous records in which Ms. Jones was admitted to the hospital because of complaints of chest pain and denied she had used cocaine. One time, reporting that she had been "clean" for five years, R. 520, yet she tested positive for cocaine use. (R. 520, 523). Ms. Jones repeatedly mislead her physicians about her cocaine use, including physician Richard J. Kovacs, a cardiologist who treated her in 2006 and 2007. The ALJ considered Dr. Kovacs's written statement of his belief that Ms. Jones was disabled and could work no more than a part-time job of four hours per day, but rejected that opinion because it was inconsistent with the overall medical record and did not consider the effects of cocaine addiction. The record supports that Ms. Jones's cardiomyopathy is at least in part cocaine-induced, and she had been advised that cocaine complicates her heart impairment. (R. 577). Moreover, Dr. Kovacs reported on November 30, 2007 (about six months before the hearing), that Ms. Jones was doing well and her multiple episodes of chest pain were non-cardiac. (*See* R. 21).

### 3. **The ALJ made reasoned findings regarding the credibility of Ms. Jones's statements regarding the limitations imposed by her mental impairments.**

The ALJ also provided a detailed analysis of Ms. Jones's mental health treatment and the reasons that he discounted the credibility of her statements that mental health problems impede her ability to work. He noted that Ms. Jones testified at the hearing that she has auditory and visual hallucinations, yet medical records in the months leading up to the hearing, including from her second mental status examination, reported her denial of auditory or visual hallucinations.

13

(R. 21-22). Ms. Jones's credibility was most severely compromised, as the ALJ explained, by her performance at the initial mental status examination in March 2005. (R. 21).

Because Ms. Jones alleged she was depressed and she had been prescribed medication for depression, the SSA ordered a mental status examination. (*see* R. 417-420). Dr. Carrie Dixon, a state agency psychologist, performed the consultative psychological evaluation of Ms. Jones. Dr. Dixon found that Ms. Jones was deceitful and had an exaggerated irritability affect. Among other things, Ms. Jones told Dr. Dixon that she has no children (but she had seven children at the time, R.514, 698), has never used alcohol or illicit drugs (but she has a history of cocaine abuse), does not smoke cigarettes (but she regularly does, R. 579), and has never been in jail or prison (but she was discharged from Wishard Hospital back to jail in May 2004 and July 2004, R. 505, R. 507). She described the colors of the American flag as black, red, and green, and said that the shape of a penny is square. She also deliberately gave false information about her date of birth and her social security number. She was wholly uncooperative and routinely answered questions about her daily living activities and physical and mental impairments with the words, "I don't know," "I guess," or "I have no idea." She claimed to have "no idea" why she cannot work and claimed she is capable of activities like cooking and cleaning and doing laundry if she feels like it. (*See* R. 417-19). Dr. Dixon's clinical opinion was that Ms. Jones was malingering within the meaning of V65.2 of the DSM-IV-TR (*see* R. 420), which states in part: "Malingerers intentionally and purposefully feign illness to achieve some recognizable goal. They may wish to get drugs, win a lawsuit, or avoid work or military service." Ms. Jones ignores this diagnosis, and provides no argument to contest the ALJ's reliance on Dr. Dixon's findings in his decision.

The ALJ's credibility determination was adequately supported and explained. There is no basis for the court to find it patently wrong.

**C.    The ALJ's RFC determination is supported by substantial evidence.**

Ms. Jones's challenge to the ALJ's RFC analysis is contained in two sentences that read in their entirety:  "The ALJ's residual functional capacity assessment (R. 19) minimizes the severity of the claimant's mental illness by ignoring the evidence proving that it is totally disabling and omits all of the resulting quite severe limitations.  Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that he is not disabled, *Indoranto v. Barnhart,* 374 F.3d 470, 473 (7th Cir. 2004)."   (Dkt. 23 at p. 35).

The argument is generic and unsupported.

Ms. Jones makes no effort to grapple with the ALJ's actual discussion of the evidence and his findings.  Further, other than calling her mental impairments "totally disabling," Ms. Jones does not identify a single functional limitation resulting from her mental impairments that the ALJ should have included, but did not include, in his RFC.

As the court's discussion with respect to the ALJ's step three finding and credibility finding reveal, the ALJ did not ignore Ms. Jones's mental impairments.  His decision thoroughly addresses the mental health records and Ms. Jones's testimony and his assessment of that evidence.  The ALJ even gave Ms. Jones "the benefit of the doubt" regarding her mental health, and included in the RFC a limitation regarding contact with the public and co-workers.  (*See* R. 22).   Based on the testimony of the vocational expert (which has not been challenged by Ms. Jones), the ALJ concluded that work exists in sufficient numbers that Ms. Jones can perform and, consequently, she is not disabled.  That conclusion is supported by substantial evidence.

## Conclusion

Based on the foregoing reasons, the Commissioner's decision is AFFIRMED.

So ORDERED.

Date: 08/01/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com